**FILED**

NOV 06 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 10-19193-B-13 |
| | ) | |
| Enrique Medina and | ) | |
| Susana Medina, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM DECISION REGARDING ORDER TO SHOW CAUSE**

Thomas O. Gillis, Esq., counsel for the debtors, Enrique Medina and Susana Medina, appeared as the Respondent.

Michael H. Meyer, Esq., appeared in his capacity as the chapter 13 trustee.

This memorandum decision follows a hearing on the court's order to show cause why Thomas O. Gillis, Esq. ("Gillis"), attorney for the debtors, Enrique and Susana Medina, should not be sanctioned for violating Federal Rule of Bankruptcy Procedure 9011(b) (the "OSC"). For the reasons set forth below, sanctions will be imposed in the amount of $500.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052 and 9014. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and

1   General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of

2   California.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).[1]

3   **Background and Findings of Fact.**  The background of this matter was set

4   forth in the OSC.  This bankruptcy commenced on August 12, 2010, with the filing of

5   a chapter 13 petition prepared for Enrique and Susan Medina (the "Debtors").  Gillis

6   is the Debtors' attorney of record.  Michael H. Meyer, Esq., is the chapter 13 trustee

7   (the "Trustee").  On January 5, 2011, the court entered an order confirming the

8   Debtors' first amended chapter 13 plan dated October 13, 2010 (Doc. No. 30: the

9   "Plan").  The Debtors have above-median income, they have a positive disposable

10  income, and the Plan requires them to make 60 payments to the Trustee in the amount

11  of $1,090 per month.  The Plan provides for payment of one claim secured by the

12  Debtors' automobile and a dividend of **not less than** 19.5% to unsecured creditors.

13  On May 31, 2014, Gillis filed a two-page motion entitled "Motion to Compel

14  Trustee to Close the Case" (Doc. No. 46:  the "Motion to Compel" or the "Motion").

15  The Motion to Compel affirmatively states that (1) the Debtors have made all

16  payments required by the Plan, (2) all "approved" claims have been paid, and (3) the

17  Trustee has refused to close the case.  With the Motion to Compel, Gillis filed a copy

18  of a printout from the Trustee's internet page dated February 19, 2013, which

19  includes an entry entitled "Estimated Months left to Payoff case over the life of the

20  case."  The entry next to that heading states "10."  When the 10 months expired and

21  the Trustee did not close the case, Gillis, relying on the information in the Trustee's

22

23

24

---

25  [1] Unless otherwise indicated, all chapter, section, and rule references are to the
    Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy
26  Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the
    effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)
27  of 2005, Pub. L. No. 109-8, 119 Stat. 23.

28                                          2

1  website, filed the Motion to Compel.[2]

2       Based on the information from the Trustee's website, Gillis accuses the

3  Trustee of inappropriately modifying the Plan (to both increase the Plan payments and

4  the distribution to unsecured creditors) without court approval.[3]  The Motion to

5  Compel requested an order compelling the Trustee to conclude his administration and

6  close the case short of the 60 month term stated in the Plan. The Motion to Compel

7  was not supported by any points and authorities setting forth the legal basis for the

8  relief requested and the Debtors' declaration simply mirrored the statements made in

9  the Motion.  At the time of the hearing, the Debtors were in the 46th month of the

10  Plan and had only made 45 payments to the Trustee.

11       In response to the Motion to Compel, the Trustee prepared and filed a four-

12  page opposition setting forth various factual and legal errors in the Motion (the

13  "Opposition").  The most significant errors were (1) the fact that the Debtors had not

14  yet made the 60 payments required by the Plan, (2) neither the secured nor the

15  unsecured claims had yet been paid in full, and (3) applicable law requires the

16  Debtors to complete all payments required by the confirmed Plan unless the Plan is

17  amended to shorten the term or the unsecured claims are paid in full.

18       The Motion to Compel was set for hearing on July 10, 2014, at 1:30 p.m., on

19  the court's regular chapter 13 calendar.  When the court called the matter, Gillis did

20  not appear and had made no previous effort to withdraw the Motion.  At the hearing,

21  _____

22       [2] The same page on the Trustee's website admonishes, "[f]igures provided on this
   website should not be relied upon for use in court or court filings."

23
       [3] On January 15, 2014, the Trustee sent to the Debtors and Gillis a letter informing
24  the Debtors that "the payments you are required to make under the your plan will actually
   fund at least 33.72% to holders of non-priority unsecured claims." (Trustee's Ex. "A.")  The
25  Trustee also informed the Debtors that, "effective January 31, 2014, we are adjusting our
   system to commence paying holders of non-priority unsecured claims based on the higher
26  percentage."  Finally, the Trustee confirmed that "this change does not increase your plan
   payment amount."  The Debtors did not respond to the Trustee's letter or file any objection
27  to the increased distribution.

28                                        3

the court denied the Motion to Compel for the reasons stated in the Trustee's Opposition and subsequently issued the OSC.

In response to the OSC, Gillis filed a new motion asking the court to reconsider and vacate the ruling on the Motion to Compel. That matter was set for hearing on August 28, 2014 (the "Motion to Vacate"). The OSC was set to be heard at the same time. The Motion to Vacate presented a credible explanation for Gillis' failure to appear at the hearing on July 10, but offered no new evidence or legal authority to support Gillis' contention that closure of the case was warranted, or that the Trustee was acting inappropriately. Both Gillis and the Trustee responded to the OSC. In his responsive pleadings, Gillis again accused the Trustee of increasing the Plan payments and the distribution to unsecured creditors without court approval. At the hearing, the Motion to Vacate was denied. After oral argument, the OSC was taken under submission. Gillis subsequently filed a notice of withdrawal of the Motion to Compel.

**Applicable Law.** The Bankruptcy Code defines the appropriate term for a chapter 13 plan filed by above-median-income debtors. Unless the plan provides for full payment of all allowed unsecured claims over a shorter period of time, a chapter 13 debtor must pay his or her projected disposable income to the chapter 13 trustee for an "applicable commitment period" of not less than 5 years. § 1325(b)(4). Here, there is no dispute that the statutory "applicable commitment period" for the Debtors' less-than-full-payment Plan is 5 years (60 months). Absent full payment of all unsecured claims, the appropriate procedure for shortening the term of a confirmed chapter 13 plan is to modify the plan. § 1329(a)(2).

In 2007, the Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP") dealt with a situation strikingly similar to the case before the court. *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538 (9th Cir. BAP 2007). In *Fridley*, the chapter

4

13 debtors asked the court to enter their discharge after they made a lump sum payment of the amounts required under a 36-month plan. The motion was denied because the debtors had not finished making all payments required during the "applicable commitment period."

The court in *Fridley* confirmed that the term "applicable commitment period" is a temporal requirement. *In re Fridley*, 380 B.R. 538 at 544. The applicable commitment period for above-median debtors is five years unless the plan provides for a 100% payback to unsecured creditors. *See e.g. id* at 545. If the plan does not pay 100% to unsecured creditors, then Debtors have "expressly committed themselves to make monthly payments for the entire applicable commitment period." *Id.*

After considering the Motion to Compel, which was filed with inaccurate facts and without any supporting legal authority, this court issued the OSC for an apparent violation of Fed. R. Bankr. P. 9011(b). Rule 9011 mandates in pertinent part:

> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–
> . . .
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Sanctions are authorized, after notice and a reasonable opportunity to respond, if the court determines that Rule 9011(b) has been violated. Such sanctions may be imposed upon attorneys, or firms, or parties, that have violated subdivision (b) or are responsible for its violation. Rule 9011(c). Such a sanction proceeding may be initiated on the court's own initiative in which the court describes the specific conduct

5

1    that appears to violate subdivision (b) and directing an attorney, firm or party to show

2    cause why it has not violated subdivision (b) with respect thereto.  Fed. R. Bankr. P.

3    9011(c)(1)(B).

4        When the court acts on its own initiative to impose sanctions for a violation of

5    Rule 9011(b), the amount of the sanctions "shall be limited to what is sufficient to

6    deter repetition of such conduct or comparable conduct by others similarly situated."

7    The sanction may "consist of, or include, directives of a nonmonetary nature, [or] an

8    order to pay a penalty into court."  Rule 9011(c)(2).

9        Rule 9011, applicable to bankruptcy cases, is modeled after Fed. R. Civ. P. 11.

10    The Ninth Circuit has defined the term "frivolous" in Civil Rule 11 to mean "a filing

11    that is both baseless *and* made without a reasonable and competent inquiry."

12    *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)

13    (emphasis added).  *Accord, Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).

14        For purposes of Civil Rule 9011, frivolousness is determined objectively.  *See*

15    *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).  The

16    questionable filings are subject to a reasonableness test based on what a competent

17    attorney, admitted to practice before the same court, would have filed.  *See id.; In re*

18    *Grantham Bros.*, 922 F.2d at 1441.  Similarly, the reasonableness of a litigant's actual

19    inquiry effort is measured against what a hypothetical competent attorney would have

20    learned from a reasonable inquiry.  *See id.* at 1442; *see also Townsend*, 929 F.2d at

21    1364 ("whether a pleading is sanctionable must be based on an assessment of the

22    knowledge that reasonably could have been acquired at the time the pleading was

23    filed.")

24        Under the objective standard, "counsel can no longer avoid the sting of [Civil]

25    Rule 11 sanctions by operating under the guise of a pure heart and empty head." *Smith*

26    *v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994). On the other hand, Civil Rule 11

27

28                                    6

frivolousness is a minimal standard.  As stated in *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011), "[Civil] Rule 11 sets a low bar: It deters 'baseless filings' by requiring a 'reasonable inquiry' that there is some plausible basis for the theories alleged."  When there is a plausible basis, even a very weak one, supporting the litigant's position, imposition of Civil Rule 11 sanctions is inappropriate.  *Id.*  "[T]o constitute a frivolous legal position for purposes of [Civil] Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands."  *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999) (quoting *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990)), *quoted with approval in Strom*, 641 F.3d at 1059.

**Discussion and Conclusion of Law.**  Gillis represents himself as an experienced attorney who has filed hundreds of chapter 13 cases.  Gillis personally signed the Motion to Compel and must be held to the ethical standard set forth in Rule 9011(b).  For the reasons stated in the Trustee's Opposition, and summarized above, the court is persuaded that Gillis did not conduct an objectively reasonable investigation of the facts relating to the status of this case, and did not reasonably research and familiarize himself with the applicable law before he signed and filed the Motion to Compel.  In light of the applicable law, there was no plausible basis supporting the Motion to Compel.  Yet, the filing of that simple two-page Motion, with no supporting legal authority, forced the Trustee to prepare a formidable and detailed Opposition.

At the hearing on the OSC, the court asked Gillis to distinguish the BAP's holding in *Fridley* from this case.  Gillis admitted that he was not familiar with the *Fridley* decision even though it has been controlling Ninth Circuit law since 2007.  Gillis stated that he understood the term "no less than a 19.5% dividend" in section

7

3.2 of the Plan to mean "more or less than 19.5%," but offered no basis for that misinterpretation. Gillis persisted in his contention that the Trustee had somehow modified the Debtors' Plan by increasing the Plan payments and the distribution to unsecured creditors, without court approval, yet the confirmed Plan has always been a 60-month Plan and the clear "no less than" language of the Plan does not limit the distribution to creditors. Gillis' allegation that the Trustee had somehow increased the Plan payments was totally baseless. When pressed by the court, Gillis was unable to articulate specifically which term of the Plan the Trustee had inappropriately modified. Finally, Gillis admitted that the Motion to Compel was filed hurriedly and that he had no defense for the form of the Motion.

**Conclusion.**

Based on the foregoing, the court finds and concludes that Gillis violated Rule 9011(b) when he filed the Motion to Compel without reasonably researching the facts and the applicable law, accused the Trustee of acting inappropriately, and forced the Trustee to prepare a response and appear at the hearing. The problem with Gillis' Motion is mitigated slightly by the potential for confusion in the information published on the Trustee's website, but the website is not the confirmed Plan and any attorney who has filed as many chapter 13 petitions as Gillis, should understand how to interpret the information in the Trustee's website. Had Gillis familiarized himself with the Bankruptcy Code and Ninth Circuit law relating to the "applicable commitment period" of chapter 13 plans, Gillis would have known that the Motion to Compel, and the allegations directed at the Trustee, were factually and legally baseless.

Had Gillis really believed it was appropriate to shorten the applicable commitment period of the Plan, and enter the Debtors' discharge, he should have filed a modified plan that so provided. In that context, the Trustee would have filed an

8

1  objection and the court could have made a ruling based on applicable law, there were

2  no grounds to accuse the Trustee of modifying the Plan without court approval.

3  Under the circumstances, the court finds that a sanction payable to the clerk of the

4  court in the amount of $500 is a reasonable deterrent to encourage Gillis to investigate

5  the facts of his cases, and to familiarize himself with applicable law, before he files

6  any future motions relating to the interpretation of chapter 13 plans and the Trustee's

7  administration of chapter 13 cases.

8      Dated: November ___5___, 2014

9

10

11  W. Richard Lee
    United States Bankruptcy Judge

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Instructions to Clerk of Court**
**Service List - Not Part of Order**/Judgment

 The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

 Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721